Concepcion CEGUERRA; Napoleon
Ceguerra, Plaintiffs–Appellants,

v.

SECRETARY OF HEALTH & HUMAN
SERVICES, Defendant–Appellant.

No. 89–16720.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1991.

Decided May 15, 1991.

Robert Capistrano, San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for the plaintiff-appellant.

Joseph Stein, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before PREGERSON, NOONAN and THOMPSON, Circuit Judges.

PREGERSON, Circuit Judge:

Concepcion Ceguerra is an elderly, indigent woman who has been eligible for Supplemental Security Income (SSI) payments under the Social Security Act since the early 1980s. When the government wrongfully terminated her benefits in 1982, she appealed. While that appeal was pending, Ceguerra lived in her son's home. She agreed that she would repay her son for her share of the household expenses after she won her appeal and received a check retroactively restoring her benefits. When she won her appeal, however, the Secretary of Health and Human Services reduced her retroactive award by one-third, on the ground that she accepted room and board from her son while the appeal was pending. The district court upheld the Secretary's decision. Because the administrative record demonstrates that Ceguerra agreed to repay her son for her share of the household expenses, we conclude that the Secre-

tary wrongfully reduced her retroactive benefits. We reverse.

### I.

Concepcion Ceguerra is eighty years old and indigent. She receives Supplemental Security Income (SSI) payments under the need-based provisions of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383d. After she began receiving SSI payments in the early 1980s, she lived in the home of her son, Napoleon Ceguerra. With part of the money from her SSI payments, she paid her share of the household expenses by making monthly payments to her son.

For reasons that are not important in this case, the Secretary determined in 1982 that Ceguerra was no longer eligible to receive SSI payments. She successfully appealed that decision, and she became entitled to retroactive payments for the approximately two-year period of time, from June 1982 through July 1984, that her payments were wrongly terminated.[1] During most of that period, Ceguerra continued to live in her son's home.

Before awarding Ceguerra's retroactive payments, the Secretary reduced the amount by one-third. That one-third reduction is the focus of this controversy. The Secretary reduced Ceguerra's payment because she received food and shelter in her son's home while her appeal was pending. Accepting food and shelter in another's household without contributing to expenses can prompt the one-third reduction in the level of benefits. *See* 42 U.S.C. § 1382a(a)(2)(A); 20 C.F.R. § 416.1131(a) (1990).

Ceguerra admits that she received food and shelter in kind from her son during the two years in question. She contends, however, that her son extended food and shelter to her under an agreement that she would repay him when she won her appeal and obtained a check that would restore her benefits retroactively. She argues that her son's extension of food and shelter to her was a loan.

Ordinarily, the Secretary does not count the proceeds of a loan as income. 20 C.F.R. § 416.1103(f) (1990). The Secretary, however, maintains that the transfer or provision of goods or services in kind can never qualify as a loan. Social Security Ruling 78–26.[2] Ceguerra argues that the value of the services she received in kind should be treated like any other loan and excluded from the Secretary's count of her income.

Ceguerra requested reconsideration of the decision to reduce her retroactive benefits. The original decision stated that Ceguerra had received free in-kind support from her son. On reconsideration, the decision was upheld on the additional ground that only cash, and not in-kind goods and services, can be loaned.

An administrative law judge (ALJ) also ruled against Ceguerra by finding that there was no loan. Although Ceguerra was not able to testify at the administrative hearing, her son Napoleon Ceguerra testified, and the rest of Ceguerra's case relied on documentary evidence. The Appeals Council upheld the ALJ, and the decision of the Secretary became final. Ceguerra then filed this action in the district court pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). After cross-motions for summary judgment, the court ruled in favor of the Secretary. We have jurisdiction over Ceguerra's timely appeal under 28 U.S.C. § 1291.

---

**1.** While her administrative appeal was pending, Ceguerra suffered a stroke and moved permanently into a convalescent hospital in 1984. With these changed circumstances, she filed a second application for SSI benefits while her appeal was pending. Ceguerra began receiving $25 each month, the rate for permanent residents of hospitals whose care is paid for by Medicaid under Title XIX of the Social Security Act. The hospital, as Ceguerra's representative payee, received the monthly $25 checks.

**2.** Social Security Rulings are binding interpretations of policy and regulations. Under current regulations, they are published in the Federal Register under the authority of the Commissioner of Social Security. "These rulings represent precedent final opinions and orders and statements of policy and interpretations that have been adopted by the [Social Security] Administration." 20 C.F.R. § 422.406(b)(1) (1990).

Ceguerra challenges the ALJ's conclusion that no valid loan existed. She also challenges the Secretary's view that agreements to repay the value of in-kind transfers can never qualify as loans that are excluded from income.

## II.

We review de novo the district court's grant of summary judgment for the Secretary. We will affirm the Secretary's decision if the factual findings are supported by substantial evidence in the record and if the proper legal standard was applied. We review de novo an administrative agency's rulings of law. In conducting that review, we recognize that in appropriate circumstances, an agency's interpretation of its governing statute and regulations may be entitled to deference.

## III.

The ALJ considered whether a valid loan existed to be a threshold issue. Because he ruled there was no valid loan, he did not discuss Ceguerra's challenge to the Secretary's view that obligations to repay the value of in-kind services can never qualify as loans that must be excluded from income. We first conclude that there is not substantial evidence in the record to support the ALJ's determination that no valid loan existed. We further conclude that no remand is necessary for further development of the record. On the record before us, we hold that a valid loan agreement did exist. In Part IV, we consider the Secretary's position that agreements to repay the value of services provided in kind do not constitute loans.

### A.

■ In affirming the decision of the Secretary, the district court characterized this as a close case. Consequently, the district court reasoned, the determination of the ALJ deserved "much deference," because the ALJ had the opportunity to observe the demeanor of the witnesses and evaluate their credibility. Opinion of the district court, at 6 n. 3.

■ The district court erred by deferring to the ALJ's opportunity to evaluate the credibility of the witnesses. In appropriate cases, administrative law judges may base their conclusion on a determination that witnesses did not testify credibly. They cannot, however, tacitly reject a witness's testimony as not credible. When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record. *See Hudson v. Bowen,* 849 F.2d 433, 434–35 (9th Cir.1988); *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987); *Aguilera–Cota v. INS,* 914 F.2d 1375, 1381 (9th Cir.1990). This rule is simply a specific application of a bedrock principle of administrative law. A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency. *See SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

Napoleon Ceguerra was the only witness at the hearing. The ALJ in this case did not find that the testimony lacked credibility. Because the ALJ made no findings to suggest that he did not believe Napoleon Ceguerra, the ALJ's opportunity to observe demeanor provides no grounds for affirming.

### B.

■ The administrative law judge accepted, as a threshold matter, the reasoning of *Hickman v. Bowen,* 803 F.2d 1377, 1381–82 (5th Cir.1986), that the provision of in-kind maintenance and support can qualify as a loan. Adopting the test of the *Hickman* case, the ALJ explained that Ceguerra had the burden of showing that the in-kind support was extended in realistic anticipation of repayment, and that she in fact intended to repay it. The ALJ also explained that Ceguerra must show that the obligation to repay was enforceable under state law.

The ALJ concluded that the in-kind support was a gift and not a loan. The ALJ made factual findings that are not supported by substantial evidence in the

record. In addition, the ALJ applied an improper legal standard in determining the requirements of a valid loan contract.

To determine whether a loan existed, the ALJ turned to California law. The ALJ cited two sections of the California Civil Code. Section 1912 provides that loan contracts include a provision to repay an equivalent amount. Section 1914 provides that it is presumed that loans of money are to be repaid with interest, unless a written stipulation provides otherwise.

The ALJ then recounted some of the facts. He noted that Ceguerra received free room and board in 1980, when she first filed her application for SSI benefits. In May 1981, Ceguerra stated that she was paying $250 each month toward household expenses. The ALJ then noted that it was not until 1984, when Ceguerra's appeal was pending, that Napoleon Ceguerra signed a statement saying that Ceguerra had promised to repay, and was expected to repay, her share of the household expenses at the time her SSI payments resumed. The ALJ further noted that Ceguerra's son did not specify the amount of the retroactive payment expected.

After reciting these facts, the ALJ concluded that there was no evidence to show that there was a contract with a realistic expectation of payment. This conclusion is not supported by substantial evidence. Napoleon Ceguerra's statement itself is evidence of a contract. That statement, filed before his mother even won the appeal that made her eligible for retroactive benefits, explains that she is obligated to repay:

> Currently Mrs. Ceguerra is not paying her share of the food, rent, and utility bills. However, she is obligated to pay her share for all the months she has been living with me since her SSI benefits stopped. I expect to be paid a retroactive amount for those months plus I expect that she will pay her share of the expenses on an ongoing basis once her SSI is approved. (I believe that her hearing decision will be favorable to her so

that a retroactive payment will be possible.) She has promised to pay these amounts; this was when her SSI stopped.

Record, at 85. The ALJ also failed to mention additional evidence confirming the existence of a contract: Ceguerra herself signed a statement saying that she was expected to repay her share of the household expenses. In his only statement offered in apparent support of the conclusion that there was no evidence of a contract, the ALJ said that there was no evidence to show the *amount* of the loan. The failure to detail the amount of the loan, however, does not show that there was no contract. At the most, it shows that the parties had not agreed on every specific term. *See* Cal.Civ.Code § 1610; *Sabatini v. Hensley*, 161 Cal.App.2d 172, 326 P.2d 622, 623 (1958).

■ Moreover, Ceguerra points out that the ALJ's conclusion that the amount of the loan was uncertain was not supported by substantial evidence. Ceguerra paid $250 per month as her pro rata share of household expenses until her SSI payments were cut off. The custom of the parties is a sufficiently clear and objective guide for determining the extent of Ceguerra's contractual obligation.[3]

■ The ALJ went on to state that Ceguerra has failed to offer sufficient evidence to show that the arrangement met "the other requirements for establishing the existence of a loan." ALJ's opinion, at 4. The ALJ said that Ceguerra had not established a due date, a repayment schedule, or the amount of interest. We conclude that the ALJ applied an improper legal standard by imposing these requirements. California law requires no specific due date or repayment schedule. Cal.Civ. Code § 1657. Moreover, no particular date could have been specified in this case, because the parties did not know when or if Ceguerra would win her appeal and receive her retroactive payments. Nor are we aware of any law that holds that agree-

---

**3.** A document filed with the Secretary in 1984 showed that Ceguerra's share of the household expenses had increased to $310 a month. Applying information in the record, Ceguerra calculates in her brief that the total value of the loan is $5120.

ments to repay are invalid if they fail to specify a rate of interest.

The government does not argue that the ALJ was correct in "requiring" a due date, an interest rate, and a specific repayment plan before an agreement could be considered enforceable. Instead, it contends that the ALJ was merely noting that the purported contract's silence about these common features of loan contracts was further evidence that the parties did not really have an agreement. The government's argument is not convincing. The ALJ announced a legal standard that he described as "the other requirements for establishing the existence of a loan." In this case, that legal standard was erroneous.

■ The ALJ determined that the provision of maintenance to Ceguerra was not a loan but a gift. The finding of a gift is not supported by substantial evidence. Indeed, it is directly contrary to the evidence. As Ceguerra points out, the key element of a gift is the donor's intent to make a gift. In this case, the record contains statements from both the donor and Ceguerra that there was no gift intended.

In concluding that Napoleon Ceguerra made a gift, the ALJ did not explain the legal standard for determining whether a transfer of property was a gift, nor did the ALJ discuss the clear evidence in the record negating the conclusion that the donor intended a gift.[4]

In concluding that there was a gift and not a loan, the ALJ relied in part on the fact that Ceguerra's son provided free maintenance in 1980, before she ever applied for and began receiving SSI payments. That earlier support led the ALJ to conclude that any support extended later was also a gift:

> The claimant herself admitted in 1980 that she was receiving free room and board from her son. Thus, it is reasonable to assume that, as long as the claim-

ant lived with her son, he would have provided for his mother's support, as he did in 1980, regardless of whether or not she received Supplemental Security Income Benefits.

ALJ's opinion, at 5. The ALJ's conclusion is unwarranted and contradicts the evidence. It is undisputed that Ceguerra paid her son $250 each month in 1981 and 1982 while she was receiving SSI payments. The fact that Ceguerra's son extended a gift in 1980 when his mother had no income and no claim to SSI payments does not mean that the same arrangement resumed in 1982, after Ceguerra had been making regular payments to her son before her benefits were cut off. When those benefits were cut, she maintained, correctly, that the termination was wrong. Because Ceguerra and her son had a reasonable expectation that the termination would be reversed, there is no basis for assuming that any support extended was a gift and not a loan. The ALJ's conclusion that there was a gift is not supported by substantial evidence.

### C.

■ When we reverse an ALJ's findings on the ground that they are not supported by substantial evidence, we must decide whether to remand for further development of the record. In this case, there is no need to develop further the factual record. It is already sufficiently complete to resolve Ceguerra's contention that there was a valid and enforceable agreement to repay the value of the food and shelter she received in kind. We hold that Ceguerra has established on this record that there was a valid agreement to repay.

As we explained in *Varney v. Secretary of HHS*, 859 F.2d 1396 (9th Cir.1988), if an ALJ has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds in the original decision. *Id.* at

---

**4.** The government refers to a "presumption" of a gift when a donee of property is the natural object of the grantor's affection. *See Lloyds Bank California v. Wells Fargo,* 187 Cal.App.3d 1038, 1040, 232 Cal.Rptr. 339, 341 (1986). The ALJ did not rely on this case or on the principle

it espouses. It seems that even if the presumption suggested in this case applies beyond transfers of real estate, it cannot apply to cases, like the present case, where there is affirmative evidence that the donor did not intend a gift.

1399. In this case, the ALJ did not find that any of the testimony of Napoleon Ceguerra, the only witness, lacked credibility. Following the rule of *Varney* and *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989), we therefore accept that testimony as credible. *See Varney*, 859 F.2d at 1401; *Hammock*, 879 F.2d at 503.

Because the ALJ found no reason to doubt the testimony of Napoleon Ceguerra, we accept it and consider it along with the confirming documentary evidence. Napoleon Ceguerra testified that there was an agreement that Ceguerra would reimburse him for her share of the household expenses when she won her appeal and her benefits were restored. The record contains a statement from Ceguerra confirming that there was such an expectation of repayment. It also contains Napoleon Ceguerra's statement, signed in 1984 while his mother was appealing the termination of her benefits, that his provision of food and shelter was a loan. The record contains no contrary evidence. There is no reason to require a remand and force Ceguerra to endure additional delay. *See Lewin v. Schwieker*, 654 F.2d 631, 635 (9th Cir. 1981); *Hammock*, 879 F.2d at 503. We conclude that there was a valid and enforceable oral agreement to repay the value of the in-kind maintenance Ceguerra received.

## IV.

■ Our conclusion that Ceguerra has established that there was a valid oral agreement to repay requires that we also determine whether the Secretary must treat such an arrangement the same as loans of cash and exclude the value of the loaned services from Ceguerra's income. According to the rulings of the Secretary, in-kind transfers of goods or services can never constitute loans; only cash can be loaned. Our evaluation of the Secretary's position requires a purely legal inquiry that does not require remand. We reject the Secretary's interpretation, and in doing so, we join every other court that has publish-

ed a decision on this legal issue. *See Hickman v. Bowen*, 803 F.2d 1377 (5th Cir. 1986); *Ruppert v. Secretary of HHS*, 671 F.Supp. 151, 167–69 (E.D.N.Y.1987), *on appeal*, 871 F.2d 1172, 1177–78 (2d Cir.1989).

The Secretary reduced Ceguerra's retroactive benefits by one-third on the premise that the food and shelter she received from her son, while her appeal was pending, constituted "in-kind income." The statute clearly provides that if Ceguerra received free support and maintenance by living in her son's home, without any obligation to repay the value of that support, she would have received "unearned income." In such a case, the statute and the administrative regulations require a one-third reduction in benefits. *See* 42 U.S.C. § 1382a(a)(2)(A); 20 C.F.R. § 416.1131 (1990).

According to the Secretary's interpretation of the statute, loans do not count as income:

> *Proceeds of a loan.* Money you borrow or money you receive as repayment of a loan is not income.... Buying on credit is treated as though you were borrowing money and that you purchase this way is not income.

20 C.F.R. § 416.1103(f) (1990) (emphasis in original). Although the Secretary reasonably and properly does not count the proceeds of a loan as income, the Secretary takes a narrow view of what constitutes a loan. According to the Secretary's interpretation of this regulation, only cash can be loaned. *See* Social Security Ruling 78–26.[5]

The Secretary's position, if accepted, allows the government to gain unjustly from its own wrongdoing. Ceguerra was eligible for SSI benefits and had been receiving them until the Secretary wrongfully terminated them in 1982. The Secretary's wrongful termination forced Ceguerra to rely on her son for more than two years while her appeal was pending. After the Secretary finally agreed that Ceguerra's benefits had been terminated wrongfully, he attempts to withhold a portion of the wrongfully-terminated benefits because of

**5.** The Secretary is considering revising the administrative regulations to reflect the view that the term "loan" refers only to advances of cash. *See* 55 Fed.Reg. 33,922 (1990).

the living arrangements that the wrongful termination forced on Ceguerra in the first place.

We believe that the Secretary applies too narrow an interpretation of the regulation that excludes loans from income. In *Hickman,* the court noted that when Congress defined "income," it made no distinction between cash and in-kind income. 803 F.2d at 1381. Similarly, the Secretary defines income to include both cash and the value of goods received in kind:

> Income is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter. In-kind income is not cash, but is actually food, clothing, or shelter, or something you can use to get one of these.

20 C.F.R. § 416.1102 (1990). Indeed, the *Hickman* court noted that throughout the statute and the regulations, income is consistently defined to include both cash income and in-kind income. In interpreting the regulation that defines what is a loan, the *Hickman* court saw no reason to distinguish between an obligation to repay what was received in the form of cash and the obligation to repay what was received in the form of goods or services in kind. 803 F.2d at 1381–82. Neither do we.

When arguing before this court, the government suggested that Ceguerra could easily have avoided the operation of the rule that reduced her benefits by one-third. According to the government, Ceguerra could have arranged to accept her loan in cash instead of in kind. If Napoleon Ceguerra had given his mother a check for $250 each month, and if she had immediately endorsed the check back to her son to cover her share of the household expenses, the Secretary would have regarded the arrangement as a valid loan of cash. We do not believe that Congress intended that eligible recipients of SSI benefits be forced to conduct such a senseless charade. Moreover, when an administrative agency interprets its governing statute to require such an absurd result, we owe that interpretation no deference.

We hold that Social Security Ruling 78–26 erroneously construes the administrative regulations and the intent of Congress. In determining eligibility for benefits under the SSI program, the Secretary properly excludes from the calculation of income the value of loans that must be repaid. For this purpose, loans include valid and enforceable agreements to repay the value of goods and services transferred in kind.

Because Ceguerra entered into a valid and enforceable agreement to repay her son for her share of the household expenses, the shelter and maintenance she received did not constitute income. We therefore reverse the Secretary's decision to reduce Ceguerra's retroactive benefits by one-third.

## V.

We reverse the district court's grant of summary judgment. We remand with instructions to enter judgment in favor of Ceguerra and to remand this case to the Secretary with instructions to restore Ceguerra's full retroactive benefits.

REVERSED AND REMANDED.