67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Deborah ROBINSON, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-55093.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 13, 1995.*
Decided Sept. 21, 1995.
 
 1
 Before: FARRIS and O'SCANNLAIN, Circuit Judges, and TASHIMA, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Deborah Robinson ("Robinson") appeals the district court's summary judgment affirming the Secretary of Health and Human Services' ("Secretary") denial of Robinson's request for supplemental security income ("SSI"). We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 4
 Robinson applied for benefits, claiming that she was not able to work due to migraine headaches. The Secretary denied Robinson's application and a subsequent request for reconsideration. At Robinson's request, the Secretary held an administrative hearing at which Robinson was represented by counsel.
 
 
 5
 Robinson was born in 1953 and has completed high school, at least two years of college, a one-year technical training program in keypunch and business machines, and a three-month program in data processing. She worked as a sales clerk from January, 1980, to August, 1982, and again from October, 1982, to June, 1984. Between 1984 and 1986, Robinson worked as a movie extra, a professional dancer and a legal secretary. From 1988 to 1990, she worked sporadically, but the Administrative Law Judge ("ALJ") found no evidence of substantial gainful activity. Her most recent employment, which lasted 29 days, was as a sales clerk in December, 1990.
 
 
 6
 Robinson claimed at the hearing that she has not been able to work since 1988 due to daily, constant migraine headaches.[1] Robinson began seeking medical care for her headaches in April, 1989. Medical records indicate that she reported to her doctors that her headaches began in February, 1989. In May, 1989, Robinson was admitted to Los Angeles County/University of Southern California Medical Center ("LAC/USC") for tests and was diagnosed as suffering from headaches of unknown origin and atypical face pain.
 
 
 7
 In September, 1989, Robinson began visiting the emergency room at LAC/USC for Demerol shots to relieve her pain. During one such visit, LAC/USC denied Robinson's request for Demerol and referred her to Cedars-Sinai Medical Center's pain management center ("Cedars"). In October, 1989, Dr. Graff-Radford ("Radford") of Cedars began to treat Robinson and prescribed a regimen of medication and exercises. The extensive medical record reflects only partial cooperation with Radford's treatment regime.[2] Despite warnings from Radford that Demerol ultimately might make her headaches worse, Robinson continued to seek Demerol injections at the emergency room. Emergency room records show nine visits in 1991, 24 in 1989, 26 in 1990, and 12 in 1992.
 
 
 8
 According to an April 15, 1990, medical report, Robinson told a doctor at Cedars that she experienced one or two headaches per month. In a disability report dated July 24, 1990, Robinson reported that she was able to cook twice a day, clean once a week, and shop once a week, exercise, watch television, visit relatives, drive when not on medication, and ride a bus when on medication. In a later disability report in October, 1990, Robinson stated that she is unable to maintain her household because headaches kept her from getting out of bed. She testified that she cannot watch television or read because these activities require concentration and make her headaches worse.
 
 
 9
 Dr. Woodward, who conducted a neurological examination of Robinson, noted that her prognosis was uncertain and indicated the need for ongoing medical treatment to gain control of her migraine attacks. He concluded that Robinson's physical functions were not limited with respect to her ability to do work-related activity, with the exception of photosensitivity and complaints of daily headaches. Dr. Dude ("Dude") of the California Urgent Care Medical Clinic also examined Robinson and completed a medical evaluation form which she provided. Dude noted, without medical findings, severe pain and poor concentration. He concluded that Robinson's estimated consistency in attendance and uniform performance in a regular work setting was poor.
 
 
 10
 Robinson testified that self-administered DHE shots can abort headaches if administered in time, but that she often is unable to catch headaches before they become full-blown migraines. She testified that when the DHE does not work she goes to the emergency room for a Demerol shot. Robinson testified that while her medication helped, they did not completely relieve her pain and kept her drowsy.
 
 
 11
 A vocational expert testified that a hypothetical person who is photosensitive and must wear dark glasses, who suffers drowsiness as a side effect of medication, and is under a continuous moderate degree of pain probably could not work. The expert said that a hypothetical person with the same constraints but suffering only mild pain could perform Robinson's prior sales work.
 
 
 12
 The ALJ found that "the medical evidence establishes that the claimant has severe migraine headaches" but that her "allegations of disability due to pain symptoms are not credible to the degree stated." He concluded that the evidence indicated that Robinson preferred Demerol shots to the long-term pain management program. The ALJ found that Robinson was not disabled and had "a residual functional capacity to perform the full range of light work which is not significantly reduced by the loss of concentration due to her pain."
 
 
 13
 The Secretary denied Robinson's claim for SSI benefits. Robinson then sought judicial review in the district court. As indicated the district court granted summary judgment for the Secretary.
 
 DISCUSSION
 
 14
 "In order to collect supplemental security income from the government, [the applicant] must establish that he suffered from a 'disability.' " Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990). A "disability" is a "medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. Sec. 423(d)(1)(A). The impairment must be of "such severity that [the applicant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. Sec. 423(d)(2)(A). The applicant has the burden of proving disability. Clem, 894 F.2d at 330; Tylitzki v. Shalala, 999 F.2d 1411, 1415 (9th Cir.1993). Robinson argues that the ALJ's decision that she is not disabled is not supported by substantial evidence and that the ALJ did not apply proper standards regarding testimony of a treating physician, Robinson's credibility, and testimony of a vocational expert.
 
 I. Standard of Review
 
 15
 We review the district court's grant of summary judgment de novo. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.1992); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir.1995). "The Secretary's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or it is based on legal error." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989) (internal quotations omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance--it is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." Orteza, 50 F.3d at 749; Richardson v. Perales, 402 U.S. 389, 401 (1971). "[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." Orteza, 50 F.3d at 749.
 
 II. Treating Physician Testimony
 
 16
 Robinson argues that the ALJ erred in giving Dude's report "little weight because of the extensive and more accurate medical records received from the claimant's treating doctors." Robinson contends that both Dude and Radford are treating physicians and that the ALJ improperly rejected the uncontradicted opinion of a treating physician without clear and convincing reasons for doing so. See Magallanes, 881 F.2d at 751. We "afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' " Id. (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987)).
 
 
 17
 Robinson's contention that Dude is a treating physician is not supported by the record. The ALJ correctly noted that there is "no evidence that the claimant is currently using [Dude] as a treating physician. Only two treatment dates are cited and the current medications listed are inconsistent with the list provided by the claimant on the same day." Even if Dude is a treating physician, the "the ALJ need not accept a treating physician's opinion which is 'brief and conclusory in form with little in the way of clinical findings to support [its] conclusion.' " Id. (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986)).
 
 
 18
 Dude's report is not uncontradicted medical testimony which was rejected in favor of the ALJ's own opinion. The ALJ expressly deferred to more extensive medical information on the record from doctors at Cedars, who unquestionably are treating physicians, and from Dr. Woodward. "Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Id. (internal quotations omitted); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984). The ALJ did not commit error in discounting Dude's report.
 
 III. Credibility
 
 19
 The ALJ found that "[a]lthough the claimant does have a medically determined impairment which could be expected to produce pain, the functional limitations alleged by the claimant due to the intensity and persistence of her headache pain symptoms are not credible to the degree stated." Robinson argues that the ALJ erred in rejecting her credibility regarding the degree of pain she suffers.
 
 
 20
 We give "great deference to credibility determinations made by administrative law judges." Silver v. United States Postal Service, 951 F.2d 1033, 1042 (9th Cir.1991). "[T]he ALJ could properly disregard [claimant's] self-serving statements to the extent they were unsupported by objective findings." Coats v. Heckler, 733 F.2d 1338, 1340 (9th Cir.1984); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking."). A rejection of claims of pain, however, must be express and supported: "[ALJs] cannot ... tacitly reject a witness's testimony as not credible.... [T]he ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Ceguerra v. Secretary of Health & Human Services, 933 F.2d 735, 738 (9th Cir.1991). The ALJ here expressly rejected Robinson's credibility about the extent of her pain "because of the pain relief provided by the Demerol medication, her ability to perform her daily activities and her noncompliance with the pain management program prescribed by Dr. Radford."
 
 
 21
 The ALJ noted that while Demerol injections ultimately might worsen Robinson's condition, "currently the Demerol is providing relief for the approximately one or two headaches which the claimant has each month." Robinson's pattern of emergency room visits supports the conclusion that she suffers one or two severe headaches per month. Robinson herself testified that Demerol provides relief. This testimony was supported by her continuing practice of seeking Demerol shots, although warned that they ultimately might make her headaches worse.
 
 
 22
 The ALJ noted that "observations by the claimant's treating doctors regarding her lack of compliance with the prescribed pain treatment program without any justifiable excuse is a factor to be considered in determining the claimant's entitlement to disability (20 CFR 416.930)." The medical records do indicate that, at various times, Robinson continued to seek Demerol shots against the advice of her doctor at Cedars that she did not take DHE injections early enough, that she did not take a prescribed anti-depressant medication, and that she did not do prescribed exercises. The ALJ concluded that "it is unclear if she ever followed the pain management program recommended." While there is evidence that Robinson gradually increased compliance with the prescribed treatment, this court cannot say that the ALJ's finding of noncompliance is not supported by substantial evidence.
 
 
 23
 The ALJ found that while Robinson's "testimony at the hearing indicated minimal daily activities, her daily activities as reported in the disability report, dated June 24, 1990, stated that she was able to cook twice a day, clean once a week, shop once a month, exercise, watch TV, visit friends and relatives, and drive or ride a bus when on medications." Robinson argues that she performs these activities intermittently during periods when her pain is less severe. "It is well established that sporadic or transitory activity does not disprove disability." Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir.1981).
 
 
 24
 On the other hand, "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Fair, 885 F.2d at 603. The evidence of Robinson's ability to perform certain daily activities is found in her own disability report submitted to the Secretary. Her attempts to recant these statements simply undermine her credibility further. Johnson v. Shalala, 1995 WL 442205, (9th Cir. Jul. 27, 1995) (upholding rejection of claimant's credibility regarding pain where ALJ identified "several instances of contradictions within claimant's own testimony").
 
 
 25
 "We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence." Id. There is substantial evidence to support the ALJ's finding that the functional limitations alleged by Robinson are not credible to the degree stated.
 
 IV. Vocational Expert Testimony
 
 26
 Robinson argues that the ALJ mischaracterized the testimony of the vocational expert and thus erred in finding that Robinson is capable of performing her past work as a sales clerk. In explaining his conclusion, the ALJ states:
 
 
 27
 The vocational expert was asked if a hypothetical individual with the vocational factors similar to that of claimant could perform her past work as a sales clerk with the following limitations: photosensitivity and a moderate degree of pain throughout the day, relieved by pain medication with some side-effects. The vocational expert testified that the hypothetical individual could perform her past work as a sales clerk....
 
 
 28
 Robinson is correct that the vocational expert did distinguish between a person suffering moderate pain and mild pain, testifying that the former could not work while the latter could. Even if the ALJ misstated the adjective used by the expert, this would not be sufficient error to invalidate his finding. As evidenced in the discussion above, substantial evidence supports the ALJ's skepticism about the level of pain suffered by Robinson and the resulting limitations on her capabilities. In reaching his final decision the ALJ considered factors other than the vocational expert, such as Robinson's abilities to perform daily tasks. Regardless of whether Robinson's pain is described as mild or moderate, the ALJ concluded that an individual with "vocational factors similar to that of claimant could perform her past work as a sales clerk." This finding is supported by substantial evidence.
 
 CONCLUSION
 
 29
 The ALJ's decision is supported by substantial evidence. Robinson's contentions that the ALJ erred regarding the testimony of the alleged treating physician, Robinson's credibility and the testimony of the vocational expert are without merit.
 
 
 30
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4(c)
 
 
 **
 Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 In her application, Robinson claimed that she had not been able to work since December, 1989
 
 
 [2]
 For example, progress reports from Cedars indicate that Robinson did not take prescribed DHE injections early enough, did not take a prescribed anti-depressant medication as directed, had not obtained an inhaler needed to administer a prescribed medication, and did not keep a diary as ordered