NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 10 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LOUISE AMBROSE,

Plaintiff-Appellant,

v.

OFFICE OF NAVAJO AND HOPI INDIAN RELOCATION, an administrative agency of the United States,

Defendant-Appellee.

No.    22-16696

D.C. No. 3:21-cv-08133-DLR

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Submitted April 8, 2024**
Phoenix, Arizona

Before:  HAWKINS, BADE, and DESAI, Circuit Judges.

Plaintiff-Appellant Louise Ambrose appeals the district court's order

denying her summary judgment motion, granting summary judgment to the Office

of Navajo and Hopi Indian Relocation (ONHIR), and upholding the denial of

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Ambrose's application for relocation benefits under the Navajo-Hopi Land Settlement Act (Settlement Act), 25 U.S.C. §§ 640d to 640d-31. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's summary judgment decision, and we must independently review the ONHIR's decision to determine if it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989) (first citing 5 U.S.C. § 706(2)(A), (E); and then citing *Walker v. NHIRC*, 728 F.2d 1276, 1278 (9th Cir. 1984)).

Under the Settlement Act, Congress directed that certain land in Arizona once jointly held by the Navajo Nation and the Hopi Tribe be partitioned, allocating some of the area to the Navajo Nation (NPL) and other areas to the Hopi Tribe (HPL). *See generally Clinton v. Babbitt*, 180 F.3d 1081, 1083–85 (9th Cir. 1999). Ambrose is entitled to relocation benefits under the Settlement Act's implementing regulations if she had obtained "head of household" status "as of the time []she moved from the [HPL]." 25 C.F.R. § 700.69(c), *see id.* §§ 700.69(a)(2), 700.147(a); *Bedoni*, 878 F.2d at 1122. The Independent Hearing Officer (IHO) concluded that Ambrose is not entitled to benefits because she was not a "head of household" by the time she moved off the HPL in the summer of 1978. Because these conclusions are supported by substantial evidence, we affirm.

2

1. Substantial evidence supports the IHO's determination that Ambrose moved off her family's HPL homesite in the summer of 1978. *See* 5 U.S.C. § 706(2)(E); *Nat'l Fam. Farm Coal. v. EPA*, 960 F.3d 1120, 1132–33 (9th Cir. 2020) (explaining that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence").

First, the IHO's adverse credibility determination and conclusion that the partition fence was erected in the summer of 1978 is supported by substantial evidence. When an agency decision "rests on a negative credibility evaluation," the agency "must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citations omitted). Here, the IHO articulated specific "grounds for disbelieving [the] material testimony" of Ambrose and for crediting her brother's more detailed recollection of when the partition fence was erected. *Id.* at 740. The IHO explained that Ambrose's brother "had a much better recollection of events involving the family's living situation." In support, the IHO cited Ambrose's brother's testimony "that the fence was built before the summer rains, that the summer rains caused erosion under the fence through which the sheep could return to the HPL, and that the family's only use of the HPL camp after erection of the fence was to retrieve stray livestock." This

detailed description contrasted with Ambrose's bald assertion that the fence was erected "[i]n Autumn" without any supporting rationale. Additionally, Ambrose's own testimony indirectly corroborates her brother's account considering that she recalled, "when the fence was down [her family] ha[d] to get the sheep . . . back to the Navajo side." Thus, substantial evidence supports the IHO's adverse credibility finding and conclusion that the partition fence was erected in the summer of 1978, before Ambrose left for Dixie College.

Second, substantial evidence supports the IHO's conclusion that before the partition fence was erected, Ambrose had not "moved from the [HPL]." 25 C.F.R. § 700.69(c). Indeed, before the fence was erected, Ambrose left the HPL homesite only temporarily for school. In contrast, after the partition fence was erected, both Ambrose and her brother testified that the family did not cross onto the HPL, except to retrieve stray livestock. Substantial evidence therefore supports the IHO's determination that the relevant "move off" date was when the partition fence was erected on the HPL homesite of Ambrose's family in the summer of 1978.

2.  Substantial evidence also supports the IHO's determination that "as of" the summer of 1978, which is the time Ambrose "moved from the [HPL]," she had not obtained "head of household" status. 25 C.F.R. § 700.69(c). In 1977, Ambrose relied on her host family for necessities like food, shelter, and clothing,

4

which supports the finding that she was not self-supporting. *See* 25 C.F.R. § 700.69(a)(2) (holding that an individual must be self-supporting to be a head of household). And whether Ambrose was self-supporting when she left for college in the fall of 1978 (after she "moved from the [HPL]") is irrelevant. *Id.* § 700.69(c).[1] Accordingly, the IHO's determination that Ambrose failed to establish eligibility through head of household status in the summer of 1978 when the partition fence was erected was reasonable and supported by substantial evidence. *See id.* § 700.147(b).

3.      Finally, Ambrose's fiduciary claim rises and falls with her denial-of-benefits claim. Because substantial evidence supports the IHO's denial of benefits, we conclude that Ambrose's breach of federal trust obligations claim also fails.

**AFFIRMED.**[2]

---

[1] Consequently, we need not decide whether substantial evidence supports the IHO's finding that Ambrose was not self-supporting in the fall of 1978, even considering her scholarship award in 1978.

[2] Ambrose's motion for leave to file an amended reply brief and to withdraw further excerpts of record, Dkt. No. 36, is granted.