NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 11 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LELAND TODICHEENEY,

Plaintiff-Appellant,

v.

OFFICE OF NAVAJO AND HOPI INDIAN
RELOCATION, an administrative agency of
the United States,

Defendant-Appellee.

No.   22-16042

D.C. No. 3:21-cv-08003-MTL

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted November 7, 2023
Phoenix, Arizona

Before:  HAWKINS and COLLINS, Circuit Judges, and SEEBORG,** District
Judge. Dissent by Judge COLLINS.

Leland Todicheeney appeals the district court's grant of summary judgment

to the Office of Navajo & Hopi Indian Relocation (ONHIR) affirming the

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*     The Honorable Richard Seeborg, Chief United States District Judge
for the Northern District of California, sitting by designation.

ONHIR's denial of his application for relocation benefits. We review *de novo* the district court's grant of summary judgment. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017). We review the ONHIR's decision to determine if it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo-Hopi Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1989); *see also* 5 U.S.C. § 706(2). We have jurisdiction under 28 U.S.C. § 1291, and we vacate and issue a limited remand.

Todicheeney is an enrolled member of the Navajo Nation who grew up in the Fingerpoint Valley in the Teestoh Chapter area. After court-partitioning pursuant to the Navajo-Hopi Settlement Act of 1974, Todicheeney and his family were required to relocate from their land. Todicheeney is entitled to relocation benefits under the Settlement Act if he can show he (1) resided on Hopi court-partitioned land on December 22, 1974, and (2) was a "head of household" on or before July 7, 1986. *See* 25 C.F.R. § 700.147(a), (e). Only the second question—whether Todicheeney qualified as a "head of household"—is contested on appeal. A single applicant can constitute a head of household if the applicant shows he "actually maintained and supported" himself. *Id.* § 700.69(a)(2). Earnings of $1,300 per year are sufficient to make out a *prima facie* showing of self-support. The $1,300 threshold is not an absolute rule, and an applicant who makes less than $1,300 may still qualify as self-supporting based on other evidence.

In 2009, Todicheeney applied for relocation benefits. The ONHIR denied Todicheeney's application, finding he was not a "head of household" when he moved off the Hopi Partitioned Lands (HPL) in June 1980 because he was not self-supporting as of that date. The ONHIR noted Todicheeney's Social Security earnings statement did not show earnings of $1,300 per year until many years after he moved off the HPL. Todicheeney appealed the ONHIR's determination. The Independent Hearing Officer (IHO) who heard Todicheeney's appeal found Todicheeney failed to meet his burden to show he was a self-supporting head of household prior to June 1980 and, therefore, failed to establish his entitlement to relocation benefits. Todicheeney then filed the instant suit against the ONHIR in district court pursuant to the Administrative Procedure Act. The district court granted summary judgment to the ONHIR and affirmed the agency's determination.

The IHO denied Todicheeney relocation benefits largely because of Todicheeney's failure to provide documentary evidence supporting his claimed wages working for Emmett Kindle, a federal contractor, and after finding Todicheeney's testimony, along with the testimony of his two witnesses, not credible. In so doing, the IHO made several errors. First, the IHO erred when he refused, without explanation, to credit Todicheeney's testimony, or the testimony of Todicheeney's sister or uncle, that Todicheeney had several income streams

3

during the relevant years in addition to his work for Kindle. *See Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1150–51 (9th Cir. 2009) (agency action is arbitrary and capricious where the agency fails to "consider an important factor or aspect of the problem"). The IHO heard testimony about how Todicheeney (1) earned significant income from herding sheep and (2) earned other income from hauling wood and water for neighbors during the relevant years. Todicheeney testified he would earn $200 to $300 per month by sheepherding in different areas of the Reservation (including in places like Greasewood, Dilkon, and Forest Lake) and would herd sheep for up to six months out of the year. Todicheeney also testified he earned between $20 and $50 hauling wood and water for neighbors approximately every two weeks when they received their checks. Cheryl Todicheeney corroborated this testimony.

Nevertheless, the IHO did not credit any testimony from Todicheeney or either witness that Todicheeney made *any* income sheepherding or performing odd jobs. The IHO held that because "there [was] no documentation to support applicant's claims of income earned more than 30 years ago, [his] oral recollections about any money he earned [was] fundamentally flawed and wholly incredible." To the extent the IHO declined to consider testimony regarding Todicheeney's sheepherding or work for neighbors solely based on a lack of corroborating physical documentation and without providing specific, non-

4

conclusory reasons as to why that testimony was not otherwise credible, this was error. The IHO should have calculated how much income Todicheeney earned from these sources of income and factored this result into his analysis of whether Todicheeney was self-supporting. Indeed, the ONHIR may accept undocumented income when determining whether the $1,300 threshold was met given that individuals on the HPL often work odd jobs to support themselves and for which no documentation exists. *See, e.g.*, *O'Daniel v. ONHIR*, No. 07-354-PCT-MHM, 2008 WL 4277899, at *5 (D. Ariz. Sept. 18, 2008). The IHO did not explain why the fact Todicheeney earned certain types of undocumented income "more than 30 years ago" should be counted against him in this instance, but that is precisely what he did when he found Todicheeney "not a credible witness about any of his claimed employment or earnings" because "no records exist."

Second, while the IHO has discretion to discount claimed earnings about informal work where he finds relevant testimony not credible, the IHO must offer specific explanations for such findings and then explain how that incredibility bears on the relevant claimed income. *See Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record."). Several of the IHO's negative credibility findings in this case were not supported by

substantial evidence. The IHO, for instance, declined to find Todicheeney earned income sheepherding or working odd jobs on the reservation because he found other testimony about Todicheeney's work for Kindle inconsistent or unreliable but without explaining why Todicheeney's testimony *about sheepherding and odd jobs* was not credible. Similarly, the IHO discounted all of Cheryl Todicheeney's testimony about "any amounts of money [Todicheeney] earned from any of his activities helping neighbors," but never explained why Cheryl's testimonial inconsistencies about Todicheeney's work for Kindle meant she was not credible as to Todicheeney's non-Kindle-related income streams.

The IHO discounted (to $0) Todicheeney's claimed income from working for Kindle based on the absence of otherwise expected documentation, testimonial inconsistencies, and Todicheeney's failure to reference this employment for Kindle in his benefits application. The IHO reasoned that because Kindle was a federal contractor, Todicheeney's earnings from this work should have been—but were not—reflected in his Social Security earnings statements. These may have been valid reasons to discount Todicheeney's claimed income from Kindle. That said, the IHO should have also considered the possibility Todicheeney's work for Kindle was not part of Kindle's federal contract but instead was the type of informal work common on the HPL. This is particularly so given Todicheeney's testimony to the IHO that he never did "any paperwork" to document his work for

6

Kindle at the time of his employment. The IHO should have also considered that while Todicheeney did not specifically mention working for Kindle on his benefits application, he was wholly reliant on his sister, Cheryl, to interpret and fill out his application.

Third, the IHO failed to consider consistent testimony from Todicheeney and his sister about how Todicheeney lived apart from his parents in his own hogan or on job sites for a significant portion of each year. The IHO found in his "Conclusions of Law" that Todicheeney "remained a dependent minor, living with his parents" in June 1980. Cheryl Todicheeney, though, testified that her brother lived apart from their parents for a number of months each year. Todicheeney confirmed in his testimony he lived "next door" to his parents. The IHO mischaracterized Cheryl's testimony when he found she testified that Todicheeney lived with his parents without considering her testimony that he lived apart from his parents for a large portion, excluding winters, of each year. Whether Todicheeney lived independently from his parents is relevant to whether he was self-supporting (regardless of whether his income exceeded $1,300 per year), and the IHO should have considered testimony offered on this point.

We therefore remand the case to the district court with instructions to remand the case to the agency so that the IHO may consider how much money Todicheeney earned from sheepherding and completing odd jobs for neighbors

during the relevant years. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the agency has not considered all relevant factors . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). The IHO should also consider whether there is an evidentiary basis to credit Todicheeney with earning some income from Kindle—even if not $600 per month—to the extent this work may have been informal, undocumented work not officially part of Kindle's federal contract. Finally, the IHO should consider the fact Todicheeney lived in a separate structure from his parents for significant periods of time during the relevant years and factor that evidence into determining whether, independently of any income-related determination, Todicheeney was self-supporting. We express no view as to the proper outcome on remand.

**VACATED and REMANDED with instructions.**

*Leland Todicheeney v. Office of Navajo and Hopi Indian Relocation*, No. 22-16042

COLLINS, Circuit Judge, dissenting:

In setting aside the decision of the Independent Hearing Officer ("IHO") that Appellant Leland Todicheeney was not entitled to relocation benefits from the Office of Navajo and Hopi Indian Relocation ("ONHIR"), the majority repeatedly disregards the applicable deferential standard of review that applies to such administrative determinations.  Because the IHO's decision applied the correct legal standards and is supported by substantial evidence, I would affirm the district court's judgment upholding that decision.  I respectfully dissent.

**I**

Under §§ 14 and 15 of the Navajo Hopi Land Settlement Act of 1974, Pub L. No. 93-531, 88 Stat. 1712 (Dec. 22, 1974), as amended (the "Settlement Act"),[1] the ONHIR is authorized to make certain monetary payments to a Navajo or Hopi "head of household" who relocates, after the partition of the area previously jointly used by the Navajo Nation and the Hopi Tribe, from land that has been partitioned to the other tribe.  Under the applicable regulations (which neither side challenges here), a "single person" may constitute a "household" if he or she "at the time [of]

---

[1] This statute is no longer classified to the current version of the United States Code.  The current version of the statute is available on the website of the Government Publishing Office at https://www.govinfo.gov/content/pkg/COMPS-13674/pdf/COMPS-13674.pdf.

his/her residence on land partitioned to the Tribe of which he/she is not a member *actually maintained and supported him/herself* or was legally married and is now legally divorced." 25 C.F.R. § 700.69(a)(2) (emphasis added).[2] That single person would then obviously be the "head" of that one-person household. *Id*. § 700.69(b). In fixing the point in time at which this latter determination is to be made, the regulation specifies that "the individual must have been a head of household as of the time he/she moved from the land partitioned to a tribe of which they [*sic*] were not a member," *id*. § 700.69(c), which date cannot be later than July 7, 1986, *id*. § 700.147(e). The regulations further state that, to be eligible for any benefits, any persons claiming to be a "head of household" must have been "residents on December 22, 1974"—the date of enactment of the Settlement Act—"of an area partitioned to the Tribe of which they were not members." *Id*. § 700.147(a). And, finally, the regulations also specify that "[i]ndividuals are not entitled to receive separate benefits if it is determined that they are members of a household which has received benefits." *Id*. § 700.147(d).

Here, there is no dispute that, on December 22, 1974, Todicheeney was a Navajo resident of a portion of the joint use area that was partitioned to the Hopi Tribe ("Hopi Partitioned Lands" or "HPL"). It is also undisputed that the date on

---

[2] As shown, the regulation is actually missing the word "of," but I agree with Todicheeney (whose brief unwittingly adds the "of" without brackets) that the word should be there and that its omission was a scrivener's error.

2

which Todicheeney moved from the HPL was June 1980. His parents relocated at the same time, and they "were certified eligible for relocation benefits." Accordingly, Todicheeney would be eligible for benefits only if, rather than being a member of his parent's household, he instead "actually maintained and supported" himself as of June 1980.

As ONHIR states in its answering brief, "ONHIR has accepted that an individual applicant establishes a prima facie case that the applicant is self-supporting upon a showing that the applicant has earned $1300 in a year prior to moving to the land of the other Tribe as part of a subsistence way of life on the HPL." As summarized by the IHO, Todicheeney's claim that he met the $1,300 annual income level was based on the following two categories of claimed income: (1) for 10 years beginning in 1978, he assertedly worked for Emmett Kindle "doing brush pilings" for three months each fall, earning $300 every two weeks; and (2) he performed work "helping elderly neighbors with their livestock and hauling water and wood for which he was paid $300.00 per month." The IHO concluded that, based on the record evidence, Todicheeney had failed to substantiate his claimed income; that he was not a "self-supporting head of household" as of June 1980; and that he was instead a "dependent" who was "living with his parents."

## II

We review the IHO's determination that Todicheeney was not self-supporting only for substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019) (citation omitted). And where there are two permissible readings of the evidence, we cannot reject the agency's view and substitute our own. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 405 (1962). In my view, the IHO's conclusions here are supported by substantial evidence.

## A

In particular, the IHO permissibly concluded that the witness testimony that Todicheeney offered in support of his claimed work for Kindle was lacking in credibility. As the IHO explained, the work allegedly done for Kindle related to Kindle's status as a "Federal contractor," and Kindle therefore would have been required to maintain a variety of written records, and such income would have shown up in Todicheeney's record of earnings with the Social Security Administration. The absence of such records, the IHO concluded, suggested that the work never occurred. The IHO also noted that this work would have been the most significant income Todicheeney had during the relevant time period, and yet

4

it was not mentioned anywhere on his benefits application, which referenced only the occasional work he did from "1977–78" as a "Handyman, Sheepherder, etc." The IHO also concluded that the supporting testimony of Leroy Yazzie—an uncle who allegedly worked together with Todicheeney for Kindle—was not credible because (1) he too lacked any of the documentation that should have been generated by Kindle, as a federal contractor; and (2) Yazzie's "description of the work and the locations at which he and [Todicheeney] supposedly worked" differed materially from Todicheeney's testimony. Likewise, the IHO concluded that Todicheeney's sister's testimony about his employment was not credible because she gave inconsistent testimony about the particular years and length of time that Todicheeney worked for Kindle. I might have weighed any or all of these points differently if I had been the trier of fact. Indeed, were I the trier, I probably would not give much weight to the fact that Todicheeney mentioned more work locations than Yazzie did, nor would I attach much significance to what seem to me to be arguably understandable discrepancies about the exact dates and timeframes concerning events that occurred 30 or more years before the hearing. But, considered as a whole, the IHO's articulated reasons are based on a *permissible* reading of the record evidence, and they are sufficient to support the IHO's conclusions. As such, those conclusions are supported by substantial evidence and cannot be set aside.

In finding that the IHO erred on this score, the majority states that the IHO did not adequately consider (1) "the possibility Todicheeney's work for Kindle was not part of Kindle's federal contract but instead was the type of informal work common on the HPL"; and (2) the possibility that the Kindle work was omitted from Todicheeney's application because "he was wholly reliant on his sister, Cheryl, to interpret and fill out his application." *See* Memo. Dispo. at 6–7. But these are simply potential arguments as to why the IHO should have weighed the evidence differently and should have drawn different inferences and conclusions. As such, they provide no basis for setting aside the IHO's determination. *See Elias-Zacarias*, 502 U.S. at 481 n.1; *Walton Mfg. Co.*, 369 U.S. at 405. Indeed, given that Todicheeney's own testimony was that the work he did for Kindle *was* under a Forest Service contract and that Forest Service officials would "come around" to "check" the work and "saw what we were doing," the majority's remand with instructions to consider a contrary hypothesis is simply unfathomable. And to the extent that the majority suggests that the IHO was affirmatively required to specifically *mention* these competing explanations in his written ruling, there is no support for such a view. As the majority itself notes, all that is required on this score is that the agency make adequate findings for the conclusions it draws and that those findings be supported by substantial evidence. *See* Memo. Dispo. at 5. For the reasons I have explained, that standard is met here.

6

**B**

Substantial evidence also supports the IHO's conclusion that Todicheeney did not establish self-sufficiency based on the occasional work he did for neighbors. As noted, the IHO had made a general adverse credibility determination as to Todicheeney, his sister, and Yazzie, and he also noted that there was a lack of any supporting documentation as to this further alleged source of income. Once again, these determinations are based on a permissible reading of the evidence, and we therefore cannot set them aside.

In reaching a contrary conclusion, the majority states that the IHO was required to make *separate* credibility determinations with respect to these two distinct claimed categories of income. *See* Memo. Dispo. at 3–6. The majority points to nothing that supports such a rule, which seems contrary to the well-settled (and common-sense) maxim "*falsus in uno, falsus in omnibus*." *Enying Li v. Holder*, 738 F.3d 1160, 1162 (9th Cir. 2013) (holding that "material inconsistencies in testimony regarding one claim support an adverse credibility determination on another claim"). Whether and how to apply such considerations in weighing credibility is for the trier of fact. Here, it was not unreasonable for the IHO, without further explanation, to decide to discount the witnesses' testimony across the board in light of what even the majority grudgingly concedes "may have been [a] valid" discounting of the claim that Todicheeney had performed work for

7

Kindle's federal contract.  *See* Memo. Dispo. at 6.

The majority suggests that the IHO may have rejected this additional claimed category of income "*solely*" because there was no documentation to support it, but that is not a reasonable reading of the IHO's decision.  *See* Memo. Dispo. at 4 (emphasis added).  As I have explained above, that decision clearly relied on *both* the view that the witnesses were not credible and that there was a lack of supporting documentation.  Todicheeney's claims that the IHO committed legal error by assertedly applying such a *per se* rule fail for the same reason.

### C

Finally, the majority suggests that, "*regardless* of whether [Todicheeney's] income exceeded $1,300 per year," the IHO should have considered whether Todicheeney was self-supporting by "liv[ing] apart from his parents in his own hogan or on job sites for a significant portion of each year."  *See* Memo. Dispo. at 7 (emphasis added).  Nowhere in his opening brief did Todicheeney claim that he had established self-support even if he did *not* earn $1,300 a year.  Any such contention is therefore forfeited.  *See Independent Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).[3]

---

[3] The majority properly does not rely on Todicheeney's argument, based in part on multiple extra-record documents, that the IHO's decision in this case is, in some relevant sense, irreconcilable with the IHO's decision in other cases.  As the above discussion shows, each case turns on the specific facts and arguments in the administrative record of that case.  In all events, Todicheeney has not shown any

8

*    *    *

For the foregoing reasons, I respectfully dissent.

---

basis for setting aside the IHO's decision here.